

Nadia M. Pervez, Esq.<br>
Aneeba Rehman, Esq.

November 26, 2021

**VIA ECF**

Hon. Gary R. Brown
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 840
Central Islip, New York 11722

      **Re:**    *Ximena Andrea Bahamondes Indo v. Constantino Scouroudis et al.*
              <u>Civil Action No. 21-cv-04279 (GRB) (AYS)</u>

Dear Judge Brown:

      This office represents Plaintiff Ximena Andrea Bahamondes Indo (the "Plaintiff"). We write, jointly with counsel for Constantino Scouroudis, George Labos, and GCN Restaurant LLC d/b/a Opa Grille (collectively, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Counsel for the parties respectfully submit that the negotiated Settlement Agreement (attached as **Exhibit A**) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.**    **Procedural History and Plaintiff's Allegations**

      Prior to filing, prior counsel for Defendants, in an attempt to resolve the case pre-filing, produced some documents including paystubs. Plaintiff also exchanged a preliminary damages analysis based largely on Plaintiff's best recollection of the hours she worked, and the wages she received, some records and text message exchanges.

      The Plaintiff commenced this action by filing their Class & Collective Action Complaint in the Eastern District of New York ("EDNY") on July 30, 2021 (Dkt. No. 1 (the "Complaint")). On October 6, 2021, Defendants filed their Answer, denying all material allegations (Dkt. No. 9). The Court issued a Show Cause Order on October 7, 2021 requesting a submission regarding Plaintiff's good faith basis to believe that Defendants are an enterprise with annual sales exceeding

68 South Service Road, Suite 100, Melville New York 11747<br>
O: 631-427-0700   F: 631-824-9020<br>
info@pervezrehman.com   www.pervezrehman.com

$500,000 and why the Court should not decline to exercise pendent jurisdiction with respect to the state law disability claims. The submission was due on or before October 12, 2021.

Upon receipt of the Show Cause Order, counsel for Defendants reached out to discuss possibility of resolution. Over the course of multiple conversations, and exchange of information, the parties were able to reach a resolution.

**II.    The Settlement Accounts for Litigation Risk**

As set forth in the Amended Complaint, Plaintiff is a former hostess and waitress for OPA Grille. Plaintiff alleges that throughout the relevant time period Defendants paid their employees, including Plaintiff, a fixed weekly salary that fell below the statutory minimum wage and did not pay for all hours worked. Additionally, Plaintiff claims she was paid both off-the-books and on-the-books during separate portions of her employment with Defendants. Plaintiff alleges that these unpaid wage violations occurred regardless of the precise manner in which she was paid.

With respect to Defendants' records, Plaintiff alleges that the weekly hours shown in the time and payroll records are inaccurate and show fewer hours, particularly overtime hours, than Plaintiff actually worked. Furthermore, Plaintiff alleges that Defendants failed to accurately track employees' hours worked, and failed to provide them with accurate wage statements, or often provide no wage statements at all, as well as failed to provide accurate wage notices. Defendants deny these allegations. Plaintiff also maintains claims of discrimination based on her COVID-19 diagnosis.

Plaintiff provided a detailed damage calculation alleging $25,410.86 in overtime violations, plus liquidated damages and wage notice and wage statement violations. As for the discrimination claim, she alleges $5,037.14 in lost wages and $25,000 in emotional damages for the purposes of settlement only. Plaintiff's demand was for $90,858.86 which accounts for a best-case scenario for all claims. Defendants disagree with Plaintiff's allegations and specifically that she worked the overtime hours Plaintiff alleges to have worked.

Despite the parties' disputes regarding the accuracy of Defendants' records and the suitability of this action for FLSA collective certification, the parties agreed to engage in settlement discussions to attempt to amicably resolve these claims on behalf of the named plaintiff and avoid the risks associated with proving Plaintiff's claims and the costs of protracted litigation. Indeed, while Plaintiff alleges that Defendants' produced records are inaccurate and incomplete and believe that a factfinder would credit her testimony over the Defendants, Plaintiff recognizes that there are pay and time records that, if credited as accurate, could potentially limit the amount of damages Plaintiff could recover at trial regarding their minimum wage and overtime. Accordingly, Plaintiff prefers to settle now, on an individual basis, for an amount that she would be guaranteed to receive under the terms of the settlement. Further, since the parties have already exchanged a sampling of relevant paper discovery, the parties were able to make an informed decision regarding the strengths and weaknesses of their claims and the benefit of an early settlement to avoid further litigation expense.

### III.    Settlement Terms

As set forth in the Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $38,500.00 (the "Settlement Amount"), inclusive of attorneys' fees and costs. Of the Settlement Amount, $13,101.33 is payable to Plaintiffs' counsel (consisting of $402 in expense reimbursements and $12,699.33 in attorneys' fees). The remaining $25,398.67 is payable directly to Plaintiff.

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement. However, since Plaintiff has state-law discrimination claims, there is a general release as well included in the Agreement.

The agreement also includes a mutual non-disparagement provision between Plaintiff and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiffs and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive*

*Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The mutual non-disparagement clause is bolstered by additional provisions in the remedies section of the Agreement that provide preliminary steps prior to either party exercising their right to commence an action in the event of a breach of the agreement in an agreed-upon forum.

**IV.     Plaintiffs' Attorney's Fees and Expenses**

As set forth Pervez & Rehman, P.C.'s invoice (attached as **Exhibit B**) to date, Plaintiff's counsel has spent approximately 19 hours on this matter (a few hours of which were related to pre-litigation demand letter). *See* **Exhibit B.** Plaintiff's counsel has spent $6,452.08 in litigation costs and $402 in expenses. The portion of the settlement amount that Plaintiff seeks as attorneys' fees (i.e., $12,699.33) represents one-third (1/3) of the settlement amount which represents a modest lodestar amount and is consistent with what was agreed upon between the Plaintiff and her counsel in her retainer agreements.

We acknowledge that the attorneys' fees amount here is significantly higher than the lodestar (explained below) but that is because this action settled early in the anticipated litigation. Defendants provided payroll records and the parties negotiated a quick settlement. Courts have recognized that reducing fees below a contingency fee because of early settlement has the "potential to create a disincentive to early settlement." Hyun v. Ippudo USA Holdings, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (quoting McDaniel v. Cty. of Schenectady, 595 F.3d 411, 418 (2d Cir. 2010)); Riveras v. Bilboa Rest. Corp., No. 17-CV-4430-LTS-BCM, 2018 WL 8967112, at *1 (S.D.N.Y. Dec. 14, 2018) (awarding a 6.7 lodestar because "[a]pplying a lower lodestar multiplier may result in penalizing plaintiffs' counsel for achieving an early settlement."); Pinzon v. Jony Food Corp., No. 18-CV-105 (RA), 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) (awarding a 5.23 multiplier and "recognizing the importance of encouraging the swift resolution of cases . . . and avoiding creating a disincentive to early settlement —particularly where such settlement has provided Plaintiff with a substantial and speedy result."); see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005) (noting that the "lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed

Judge Gary Brown
FLSA Settlement Fairness Letter
Page **5** of **6**

review of line-item fee audits."). Indeed, early settlement benefits everyone involved in a lawsuit: plaintiff got paid earlier, defendants save unnecessary attorneys' fees, and the Court preserves judicial resources. Plizga v. Little Poland Rest. Inc., No. 15CV08820LAKBCM, 2016 WL 9307474, at *5 (S.D.N.Y. July 18, 2016) (the parties "reached a settlement agreement in principle—without the aid of the Court—before the initial pretrial conference, which was never held. The settlement negotiations themselves were "extensive," however, and based in part on payroll records and other documents provided informally by defendants. There is much to be admired in this approach, which conserves both attorney time and judicial resources.")

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern District of New York. In fact, the same rates have been approved in connection with a recent wage and hour default judgment in the Eastern District. *See, e.g., Guinea v. Garrido Food Corp*., No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (Providing that rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."). This firm has over a decade of wage and hour experience in state and federal practice. I am the only attorney who worked on this case. I am requesting an hourly rate of $475. I am a Partner/Shareholder at Pervez & Rehman, P.C. I was admitted to the Bar of the State of New York in 2010 and since then have practiced labor and employment law, with a strong focus on wage-and-hour law. I have litigated as the primary attorney dozens of FLSA cases. Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

For the purposes of this settlement, Defendants take no position with respect to counsel's request for attorneys' fees and leave to the Court's determination provided that such attorneys' fees and costs are solely paid out of the Settlement Amount in accordance with the Settlement Agreement.

**V.    The Parties Believe that the Settlement Is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y.

Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, including discussions and an exchange of damages and documents that took place over the course of several months. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiff, including records produced by Defendants, and the parties' disagreement with respect to Defendants' payment practices. Should the parties pursue further litigation, they would likely need to engage in substantial motion practice, including collective and class certification, as well as extensive discovery, including written discovery and depositions, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

\*   \*   \*   \*   \*

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

By: _____/s/_____
Aneeba Rehman, Esq.
**PERVEZ & REHMAN, P.C.**
68 South Service Road, Suite 100
Melville, New York 11747
*Attorneys for Plaintiffs*

Enclosures

cc:     All counsel (via ECF)